FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 FEB 19 PM 3: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JULIE STEWART | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-97-PT-1662-M |
| | ) | |
| FIELDCREST CANNON, INC. and | ) | |
| RANDY PATTERSON | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

ENTERED

FEB 19 1998

MEMORANDUM OPINION

## I. INTRODUCTION

Julie Stewart filed a lawsuit alleging sexual discrimination and sexual harassment against Fieldcrest Cannon, Inc. ("Fieldcrest") and Randy Patterson ("Patterson") on July 7, 1997. She claims that, while a second shift employee of Fieldcrest, Randy Patterson made inappropriate comments, sexual inquiries, propositions and unwanted touchings amounting to sexual harassment of her. Defendants Fieldcrest and Patterson move the court to dismiss the complaint on summary judgment.

## II. FACTS[1]

Fieldcrest operates a plant that manufactures bath mats and

---

[1] The facts are stated favorably to plaintiff and may or may not be the actual facts.

1

scatter rugs in Scottsboro, Alabama. Stewart was hired as a creeler mender on April 3, 1995. She was promoted to Yardage Machine Operator on the second shift on September 18, 1995. At that time, she worked in close proximity with Patterson who acted as a "working second hand." Between the time she assumed her new position and November of 1995, Stewart alleges, Patterson made inappropriate sexual comments and sexual propositions and subjected her to unwanted touching on numerous occasions. Patterson talked dirty about women he had had sexual relations with. He spoke of his ability to engage in sex for prolonged periods of time and stated that he wanted to demonstrate this prowess to the plaintiff. He asked her how long she liked to have sex. At one point, Patterson told Stewart that he wanted to "catch her on her period so he could rub it in his face." He constantly made comments about "wanting it," directed at Ms. Stewart.

In addition to the commentary, Patterson physically intruded upon the plaintiff in a sexual manner. On several occasions Patterson brushed against her, rubbed up against her with his chest and moved over to her side. She claims that he rubbed his hands on Stewart's buttocks between ten and fifteen times. Patterson also took a pair of scissors from her tool pouch and rubbed them against her side. Patterson spent many hours at

Stewart's machine as long as upper management was not around. Stewart admits to asking him for help.

Stewart spoke to Mike Arnold, superintendent of Patterson and Stewart's division, Tufting Manufacturing and Production. She complained to Arnold about Patterson's behavior and asked that he do something to stop it. Arnold assured plaintiff that he would take action. Several days later, Patterson told plaintiff that she had beautiful lips and grabbed her face with one hand. Patterson left to use the bathroom and returned with his pants unzipped, stating, "look what you did." She reported this to Arnold again, and again he told her he would tend to it.

Arnold called Patterson into his office, confronted him with Stewart's allegations and told him that Fieldcrest would not tolerate any such behavior and would terminate his employment if it continued.

In February, 1996, after witnessing her speaking with a black employee, Patterson asked her if she was going to "get her some of the Hershey bar" and said she would like a "Fudgesicle." Aside from this last incident, all gestures, touching, hanging around and dirty talked ceased.

3

Beginning in January of 1996, Patterson began to harass the plaintiff in other ways. He would not let anyone talk to her while she was working. No one was permitted to come near her machine. He refused to answer her questions regarding work-related problems. She reported this "mean" behavior to Arnold and asked to be laid off when a layoff came up. Fieldcrest offered plaintiff a position as a checker in storage and shipping in a different department, one not supervised by Patterson. Stewart declined the position. On May 26, 1996, Stewart was terminated. On July 8, 1996 she was recalled to the same position on the same shift. Plaintiff alleges that Patterson continued to be rude and aloof to her after July 1996.

Over the next two months Stewart had four accidents while on the job. Human Resources Director Ron Blanton sent her to a doctor for a medical examination. She was not disciplined for having the accidents. On August 23, 1996, Stewart passed out in the women's bathroom during her shift. After receiving medical treatment, she returned to work. Fieldcrest required Stewart to take a drug test. In September, when the opportunity for another lay-off arose, although there were other comparable jobs available, Stewart elected to be laid off. Subsequently, Stewart was offered four different positions at the plant. None of these positions were supervised by Patterson. Stewart filed an EEOC

Charge of Discrimination on June 14, 1996.

### III.  CONTENTIONS OF THE PARTIES

**A. Defendants' Contentions**

    1. Patterson cannot be found liable under Title VII.

    Stewart alleges, as part of her Title VII complaint, that she suffered sexual harassment and sexual discrimination by Randy Patterson.  Patterson claims Title VII does not provide a cause of action against individual defendants.  Only "employers," as defined by the statute and case law, may be held liable for sexual discrimination in the workplace.  Randy Patterson is not an "employer" according to Title VII.  Plaintiff has failed to allege any other federal or state law claim against Patterson.  Therefore, plaintiff has failed to state a claim against Patterson and he is due to be dismissed as a defendant.

    2. Fieldcrest is also due to be dismissed as a defendant to this lawsuit.

    Fieldcrest contends that the present complaint is untimely and barred by the 180 day statute of limitations.  Since she filed her charge of discrimination on June 14, 1996, any claims arising before December 17, 1995 are time-barred.  The only alleged sexual harassment or discrimination that occurred took place before November, 1995.  Therefore, Fieldcrest argues, her

failure to comply with Title VII filing requirements renders her sexual harassment claim time-barred. (As best we can tell the "Hershey" incident occurred in February, 1996).

Should the court disagree with defendant's timeliness argument, Fieldcrest asserts that Stewart cannot make a prima facie case of sexual harassment. The company cannot be held directly liable for Patterson's actions because it had no knowledge of his conduct prior to Stewart's complaint. No one witnessed the alleged touchings. After receiving notification, the company took prompt and immediate remedial action. It must have been effective because, according to Stewart, the harassment stopped shortly thereafter.

Fieldcrest contends that it cannot be held indirectly liable either. The alleged sexual harassment was not within the scope of Patterson's employment. Fieldcrest has an open and obvious policy prohibiting such conduct. Moreover, Patterson was not aided in his conduct due to the nature of his position or employment. He never threatened to fire or discipline Stewart at any time during the harassment.

The post-November, 1995 harassment of which Stewart complains cannot be considered sexual harassment. Patterson's

avoidance of the plaintiff, and prohibition of on-the-line chatting do not amount to actionable harassment. Fieldcrest contends that the "meanness" was not based on Stewart's sex. The isolated sexual comment, made by Patterson, concerning her contact with the black co-worker, does not amount to conduct sufficiently severe to constitute a hostile environment.

Fieldcrest also contends that any claim of discrimination based on a disparate treatment theory for the accident reports, medical examination or drug test is unfounded. None of them are logically tied to sexual harassment or discrimination. She has not offered any evidence that she was subjected to these actions because she was a woman. She points to no similar examples where a man was treated any differently. She proffers no evidence to refute the presumption that Fieldcrest was treating her just as it would any other employee displaying her symptoms. Nor does she demonstrate that any of the above actions amounted to an adverse effect on her employment. She was not fired, docked in pay, or demoted.

Any claim of constructive discharge should similarly be dismissed. Plaintiff volunteered to be laid off on two different occasions. Fieldcrest contends that Patterson's meanness, in no way, rises to the level of intolerable and illegal employment

requirements necessary for a constructive discharge. Any sexual harassment had stopped in November, 1995, six months prior to her lay-off. Further proof that the conditions were not so intolerable is that when offered comparable jobs with different departments she refused and elected to be laid off. And when given the opportunity, after being laid off, she returned to Patterson's department in July of 1996.

Fieldcrest finally contends that back pay damages are inappropriate after October 18, 1996. Stewart rejected an offer to return to a comparable job, away from Patterson's department. At that point the obligation of back pay ends. Additionally, Stewart failed to mitigate by seeking employment elsewhere. She did no work between September, 1996 and October 26, 1996. She rejected a full-time position with AVEX, declined two or three offers from Express Temporary Service and a full-time position with the Huntsville Times.

Fieldcrest argues that plaintiff has conceded summary judgment on all claims except for sexual harassment. She offers no response to the motion with regard to a constructive discharge claim, disparate treatment claim or back pay. Each claim should be summarily dismissed.

**B. Plaintiff's Contentions**

Stewart contends that her discrimination claim is not time-barred. She argues that the sexual harassment she suffered was a series of overt acts, and as long as she filed her charge within 180 days of the last act, the suit is timely. Since the comment about the black coworker was in February, 1996, a June charge of discrimination would have allowed for a timely filing of the lawsuit. She also considers the harassment to have continued while she was prohibited from talking to coworkers and treated coldly by Patterson.

Fieldcrest replies, arguing that any and all sexual harassment ended in November of 1995. Once she reported Patterson's conduct to Arnold, there was no ongoing practice or policy of discrimination she can support with evidence, and Stewart's claims against Fieldcrest are untimely.

Stewart contends that Arnold and Fieldcrest failed to take immediate corrective action. Several days after meeting with Arnold and complaining about the sexual harassment, Patterson told her she had beautiful lips and grabbed her face. He also returned from the bathroom with his pants unzipped and told her, "look what you have done." Therefore, whatever action Arnold took after the first complaint, was neither immediate nor

9

corrective.

Second, she contends that Patterson used his delegated authority to assist in the harassment. He controlled her immediate work environment. Patterson told her that nobody would believe her over him if she chose to report him.

Fieldcrest argues, in response, that Arnold took prompt and effective remedial action once he was notified of the inappropriate conduct. He assured the plaintiff that he would put an end to it. He threatened Patterson with termination and reprimanded him that very day. Stewart never again complained of sexual harassment and admitted that it ended. While the remedy resulted in Patterson avoiding contact with the plaintiff and limiting other employees' ability to speak with her, this did not constitute further sexual harassment.

### IV. CONCLUSION OF COURT

The Title VII claim against Patterson is due to be, and will be, dismissed. The plaintiff's case is relatively weak as it relates to substance and timeliness. Prior to the Eleventh Circuit opinion in <u>Allen v. Tyson Foods</u>, ___ F.3d ___ (11th Cir. 1997), this court would have had a serious doubt. The evidence here, however, is stronger than that in <u>Allen</u>. The court will at least have to hear the evidence before making a final decision.

The court will not hesitate to make appropriate decisions after hearing the evidence.[2]

This __18__ day of February, 1998.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[2]The court notes that much of the evidence referred to by the appellate court in <u>Allen</u> was not timely before this court. Further, there was <u>no</u> evidence that some of the evidence recited in <u>Allen</u> affected the plaintiff herself. Apparently a different standard was applied. The case may be an aberration.